*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-BG-1170

IN RE KAREN P. CLEAVER-BASCOMBE, PETITIONER.

A Disbarred Member of the Bar of the District of Columbia
(Bar Registration No. 458922)

On Report and Recommendation
of the Board on Professional Responsibility
(17-BD-35)

(Argued October 1, 2019                                    Decided November 27, 2019)

*Karen P. Cleaver-Bascombe*, pro se.

*Joseph N. Bowman*, Assistant Disciplinary Counsel, with whom Hamilton P. Fox, III, Disciplinary Counsel, and Julia L. Porter and Jennifer P. Lyman, Senior Assistant Disciplinary Counsel, were on the brief.

Before EASTERLY and MCLEESE, *Associate Judges*, and NEBEKER, *Senior Judge*.

PER CURIAM: Petitioner Karen P. Cleaver-Bascombe was disbarred in 2010 for submitting a fraudulent voucher for services she knew that she had not rendered and then giving knowingly false testimony before a Hearing Committee of the Board on Professional Responsibility. *In re Cleaver-Bascombe*, 986 A.2d 1191, 1192-1201 (D.C. 2010) (per curiam). In 2017, Ms. Cleaver-Bascombe filed a petition for

reinstatement. After holding an evidentiary hearing, a Hearing Committee recommended that the petition should be denied. We agree.

## I.

A petitioner seeking reinstatement must prove by clear and convincing evidence

> (a) [t]hat the attorney has the moral qualifications, competency, and learning in law required for readmission; and (b) [t]hat the resumption of the practice of law by the attorney will not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive to the public interest.

D.C. Bar R. XI, § 16(d)(1). We consider the following factors in determining whether a petitioner has made the required showings:

> (1) the nature and circumstances of the misconduct for which the attorney was disciplined; (2) whether the attorney recognizes the seriousness of the misconduct; (3) the attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent future ones; (4) the attorney's present character; and (5) the attorney's present qualifications and competence to practice law.

*In re Yum*, 187 A.3d 1289, 1292 (D.C. 2018) (per curiam).

We defer to a Hearing Committee's determinations of "basic facts," including credibility determinations. *In re Bailey*, 883 A.2d 106, 115 (D.C. 2005) (per curiam). Although the decision whether to grant a petition for reinstatement is ultimately ours, we give great weight to the recommendations of the Board and the Hearing Committee on that issue. *In re Mba-Jonas*, 118 A.3d 785, 787 (D.C. 2015) (per curiam).

## II.

The first reinstatement factor is the nature and circumstances of the conduct for which Ms. Cleaver-Bascombe was disbarred. *In re Yum*, 187 A.3d at 1292. Those circumstances were determined in the original disbarment proceedings, and for the purpose of the current proceeding we do not understand Ms. Cleaver-Bascombe to challenge the factual determinations underlying her disbarment. Those factual determinations are reflected in this court's opinion in *In re Cleaver-Bascombe*, 986 A.2d at 1193-98. In sum, Ms. Cleaver-Bascombe was an attorney appointed to represent indigent criminal defendants under the Criminal Justice Act. *Id.* at 1193. This court upheld a finding that Ms. Cleaver-Bascombe fraudulently submitted a voucher for services that she knew she had not rendered. *Id.* at 1193-

95. This court also upheld a finding that Ms. Cleaver-Bascombe gave deliberately false testimony to the Hearing Committee about the voucher. *Id.* at 1196-98. Finally, this court noted the Hearing Committee's conclusions that the testimony of a witness called by Ms. Cleaver-Bascombe was evasive, non-responsive, and contradicted by documentary evidence. *Id.* at 1197 n.8.

The court characterized Ms. Cleaver-Bascombe's misconduct as "extremely serious." *In re Cleaver-Bascombe*, 986 A.2d at 1198 (internal quotation marks omitted). As we explained,

> Where an attorney has deliberately falsified a voucher and sought compensation for work that he or she has not performed, or for time that he or she has not devoted to the case, that attorney's fitness to practice is called into serious question. This is especially true if the attorney has compounded his or her initial fraud by testifying falsely during the resulting disciplinary proceedings.

*Id.* at 1199 (internal quotation marks omitted); *see also id.* at 1200 ("'[L]ying under oath on the part of an attorney for the purpose of attempting to cover-up previous misconduct is absolutely intolerable . . . .'") (brackets, ellipses, and internal quotation marks omitted). We therefore concluded that Ms. Cleaver-Bascombe had been shown to "lack[] the moral fitness to remain a member of the legal profession," and we disbarred her. *Id.* at 1200-01.

The following evidence concerning the remaining disbarment factors was introduced at the reinstatement hearing. That evidence falls into several general categories.

## A. Inaccurate Bankruptcy Filings.

Ms. Cleaver-Bascombe filed for bankruptcy in 2012. On a form requiring her to list transfers of property within the preceding two years, Ms. Cleaver-Bascombe checked the box "None." That was false, because Ms. Cleaver-Bascombe sold a home about three weeks before filing for bankruptcy, deposited over $100,000 in proceeds into her checking account, and then withdrew over $100,000 to pay for expenses relating to a construction project in Jamaica. On the form at issue, Ms. Cleaver-Bascombe "declare[d] under penalty of perjury that [she] read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct." On a different form filed with the bankruptcy court, Ms. Cleaver-Bascombe indicated that she had $100 in her checking account, when in fact she had nearly $10,000. Ms. Cleaver-Bascombe also declared under penalty of perjury that she had read that form and that it was true and correct to the best of her knowledge. When the accuracy of her filings was challenged at a hearing

in the bankruptcy matter, Ms. Cleaver-Bascombe testified at the hearing that she had read the documents at issue. Ms. Cleaver-Bascombe subsequently withdrew the bankruptcy petition.

When questioned about this incident before the Hearing Committee, Ms. Cleaver-Bascombe initially testified that she did not read the bankruptcy petition "at all." On further questioning, however, Ms. Cleaver-Bascombe testified instead that she had not read the petition "carefully." Ms. Cleaver-Bascombe testified that the bankruptcy filings were not intentionally false, but rather contained inadvertent inaccuracies because they were filed in haste to avoid foreclosure and because Ms. Cleaver-Bascombe was having personal problems.

## B. Personal Use of Government-Issued Cell Phone.

While working for the United States Department of Agriculture, Ms. Cleaver-Bascombe incurred charges of approximately $600 making personal calls on a government-issued cell phone. There were disputes before the Hearing Committee about precisely when that happened, whether that conduct was contrary to the policies in effect at the time, and whether Ms. Cleaver-Bascombe should have

known that her conduct was impermissible. Ms. Cleaver-Bascombe claimed to have repaid the government.

## C. Recognition of Seriousness of Misconduct.

At a hearing in the bankruptcy case, Ms. Cleaver-Bascombe was asked what led to her disbarment, and she responded that she had submitted a voucher that had "maybe 30 or so entries of which two or so fees couldn't be substantiated."

During the reinstatement hearing, Ms. Cleaver-Bascombe repeatedly described her original conduct as inadequate, deficient, or shoddy recordkeeping, and she initially denied having committed perjury before the Hearing Committee in the original proceeding. Under cross-examination, Ms. Cleaver-Bascombe acknowledged that she had knowingly made a false representation on a voucher and eventually acknowledged having committed perjury before the Hearing Committee in the original proceeding. Ms. Cleaver-Bascombe initially denied that she had known that the witness she called at the original disciplinary hearing was going to lie, but she later acknowledged that that witness's testimony was part of a "cover-up."

### D. Present Character and Competence.

Ms. Cleaver-Bascombe called three attorneys who testified that Ms. Cleaver-Bascombe was remorseful for her original misconduct, was of good character, and was a very capable attorney. On cross-examination, however, those witnesses acknowledged that they were not familiar with the details of Ms. Cleaver-Bascombe's original misconduct and/or were not aware of Ms. Cleaver-Bascombe's false bankruptcy filings.

Ms. Cleaver-Bascombe introduced evidence that she had taken fifteen continuing legal education (CLE) courses since her disbarment. She also introduced evidence that she was certified as a mediator in Jamaica and was teaching at the University of Technology in Jamaica.

### III.

The Hearing Committee recommends that Ms. Cleaver-Bascombe's petition for reinstatement should be denied. In support of that recommendation, the Hearing Committee analyzed the five reinstatement factors as follows.

First, Ms. Cleaver-Bascombe's original misconduct was "exceedingly serious."

Second, Ms. Cleaver-Bascombe's conduct during her period of disbarment included conduct "bearing a striking resemblance to that for which she was disbarred -- namely submitting false information on court forms for financial gain." Specifically, the Committee did not credit Ms. Cleaver-Bascombe's testimony at the reinstatement hearing that she had not read the bankruptcy forms, and the committee concluded instead that Ms. Cleaver-Bascombe dishonestly failed to disclose information on the bankruptcy forms. The Hearing Committee also found that Ms. Cleaver-Bascombe had acted improperly with respect to her use of a government-issued cell-phone. We need not address the latter incident, however, because it does not affect our conclusion as to the proper disposition of this matter.

Third, Ms. Cleaver-Bascombe minimized her original misconduct, both during the bankruptcy hearing in 2012 and at the reinstatement hearing in 2018. Although Ms. Cleaver-Bascombe offered witnesses in support of her contention that she understood the seriousness of her original misconduct, those witnesses did not persuade the Hearing Committee, particularly given that two of them were not familiar with details of Ms. Cleaver-Bascombe's misconduct.

Fourth, for essentially the reasons already stated, the Hearing Committee was not persuaded that Ms. Cleaver-Bascombe had shown that the character traits that led to her disbarment no longer exist.

Fifth, the Hearing Committee was not convinced that Ms. Cleaver-Bascombe had demonstrated current competence to practice law. The Hearing Committee explained that only three of Ms. Cleaver-Bascombe's CLE courses related to keeping abreast of legal developments, with the rest having related to Ms. Cleaver-Bascombe's prior position as a non-lawyer investigator for the Department of Agriculture. The Hearing Committee also noted that Ms. Cleaver-Bascombe had not introduced evidence about the competence of her work as a mediator and teacher in Jamaica. Finally, the Hearing Committee found "vague and unconvincing" the testimony of one of Ms. Cleaver-Bascombe's witnesses as to Ms. Cleaver-Bascombe's efforts to keep abreast of legal developments.

**IV.**

With the exception of the incident involving the personal use of a government-issued cell phone, on which we need not and do not rely, we fully agree with the

Hearing Committee's analysis and recommendation. We are not persuaded by Ms. Cleaver-Bascombe's arguments to the contrary.

First, Ms. Cleaver-Bascombe argues that the Hearing Committee's recommendation is "incorrectly based on [her] past acts." To the contrary, the first reinstatement factor is "the nature and circumstances of the misconduct for which the attorney was disciplined." *In re Yum*, 187 A.3d at 1292. The Hearing Committee thus quite appropriately placed substantial weight on the nature and gravity of Ms. Cleaver-Bascombe's original misconduct.

Second, Ms. Cleaver-Bascombe in essence challenges the Hearing Committee's factual conclusions in various respects. For example, Ms. Cleaver-Bascombe argues that the inaccuracies in her bankruptcy filings were the result of innocent error, not dishonesty. We see no basis to look behind the contrary factual determinations of the Hearing Committee on this point or the other points raised by Ms. Cleaver-Bascombe. *See, e.g.*, *In re Tun*, 195 A.3d 65, 72-73 (D.C. 2018) ("We are required to defer to Hearing Committee credibility findings if they are supported by substantial evidence on the record."; "[D]eference to the Hearing Committee's factual findings and credibility determinations is especially heightened where the

determinations are based on direct observation of the respondent.") (citation, brackets, and internal quotation marks omitted).

Third, Ms. Cleaver-Bascombe argues that the Hearing Committee's concerns about Ms. Cleaver-Bascombe's conduct relate to incidents -- such as the bankruptcy filing -- that were "remote in time." We do not agree that the false bankruptcy filing in 2012 was unduly remote in time to be given weight in assessing Ms. Cleaver-Bascombe's reinstatement petition. Moreover, the Hearing Committee also focused on concerns that were more temporally proximate, such as Ms. Cleaver Bascombe's failure, even as of the reinstatement hearing in 2018, to accept full responsibility for her original misconduct.

Finally, Ms. Cleaver-Bascombe argues that the Hearing Committee did not adequately consider her testimony, and that of her witnesses, that she was remorseful, of good character, and competent to practice law. We disagree. The Hearing Committee reasonably explained the limitations of that evidence. Here too we see no reason to look behind the reasoning and recommendation of the Hearing Committee.

For these reasons, we adopt the recommendation of the Hearing Committee, and we deny Ms. Cleaver-Bascombe's petition for reinstatement.

*So ordered.*